UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUSTIN ALLEN CHIN,

Plaintiff,

v.

THUMBTACK INCORPORATED, et al.,

Defendants.

Case No.  25-cv-05245-JSC

ORDER RE: MOTION TO COMPEL

ARBITRATION

Re: Dkt. No. 21

Justin Allen Chin ("Plaintiff") sues Thumbtack, Inc. ("Thumbtack") and others for fraudulent concealment and representation; unjust enrichment; breach of implied contract; and violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act.  (Dkt. No. 17 at 17.)[1]  Now pending before the Court is Thumbtack's motion to compel arbitration.  (Dkt. No. 21.)  Defendant has shown an arbitration agreement exists and the arbitration agreement unambiguously delegates questions of arbitrability to the arbitrator.  Plaintiff did not file an opposition and stipulated to vacating the hearing on it.  Therefore, the Court GRANTS Thumbtack's motion to compel arbitration.

**BACKGROUND**

**I.      COMPLAINT ALLEGATIONS**

Thumbtack's platform is "an online directory allowing users to search for, rate, and hire local professionals to work on a variety of personal projects, including home improvement, financial and legal services, computer and IT issues, and event planning."  (Dkt. No. 17 ¶ 2.) Plaintiff was a seller of services on Thumbtack.  (*Id.* ¶ 1.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Thumbtack made misleading representations to service providers on its platform regarding its fee system and sale of leads. (*Id.* ¶¶ 12, 15.) Then, in 2022, Thumbtack unilaterally suspended Plaintiff from the platform without notice, even though "Plaintiff was never requested for feedback to respond to customer complaints to Thumbtack." (*Id.* ¶ 14.) Thumbtack does not provide service providers with due process in their procedures for suspension, appeal of suspension, and termination. (*Id.* ¶ 13.) In addition, Thumbtack's policy and practices for obtaining consumer reports on service professionals violates federal and state law. (*Id.* ¶ 16.)

## II. PROCEDURAL HISTORY

On June 23, 2025, the Law Offices of Justin Chin LLC, represented by Plaintiff, sued Thumbtack; Fairclaims, Inc.; Laura Bottaro; Tyler Bailey; Erika Hager; and Melissa Sultan. (Dkt. No. 1.)[2] The Court twice issued an order to show cause because the Law Offices of Justin Chin LLC was a corporate entity and could "appear only through a member of the bar of this Court," and Plaintiff was not admitted to practice in the Northern District of California. (Dkt Nos. 9, 11.) Plaintiff then filed an amended complaint as an unrepresented plaintiff alleging causes of action for: (1) fraudulent concealment and representation; (2) unjust enrichment; (3) breach of implied contract; (4) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (5) violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500; and (6) violations of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750. (Dkt. No. 17 at 17.) Thumbtack then moved to compel arbitration and stay proceedings as to Plaintiff's claims against it. (Dkt. No. 21.) Plaintiff has not opposed Thumbtack's motion and agreed to vacate the hearing. (Dkt. No. 29.)

## III. RELEVANT FACTS RE: ARBITRATION AGREEMENT

### A. Terms of Use ("TOU")

As of November 7, 2022, Thumbtack's effective TOU ("November 2022 TOU") included at top an all-caps, bolded, hyperlinked notice reading:

---

[2] The deadline to serve the Amended Complaint was February 17, 2026. (Dkt. No. 16.) Plaintiff served Thumbtack. on November 26, 2025. (Dkt. No. 26.) Plaintiff has not served any other of the named defendants.

United States District Court
Northern District of California

United States District Court
Northern District of California

**IMPORTANT NOTICE: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW. PLEASE READ CAREFULLY.**

(Dkt. No. 21-2 at 2 (blue color, bold, and all caps in original).)  When clicked, the link navigates the user directly to the TOU's "Arbitration and Class Action Waiver Section," which begins with the text: "**PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING  YOUR RIGHT TO FILE A LAWSUIT IN COURT.**"  (*Id.* at 25 (bold and all caps in original).)  The "Arbitration and Class Action Waiver Section" includes three provisions relevant to this motion: (1) a binding arbitration provision, (2) a delegation clause, and (3) a 30-day opt out provision.  The binding arbitration provision states:

> [E]ither party may initiate binding arbitration as the sole means to resolve claims, subject to the terms set forth below. Specifically, all claims arising out of or relating to these Terms or previous versions of these Terms (including the Terms' or Privacy Policy's formation, performance, and breach), the parties' relationship with each other, and/or your use of the Platform will be finally settled by binding arbitration, as described below.

(*Id.* at 25-26.)  Then the delegation clause states:

> The arbitrator, and not any federal, state, or local court or agency, will have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms or the Privacy Policy, including but not limited to any claim that all or any part of these Terms or Privacy Policy is void or voidable, whether a claim is subject to arbitration, or the question of waiver by litigation conduct. The arbitrator will be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator's award will be written and will be binding on the parties and may be entered as a judgment in any court of competent jurisdiction.

(*Id.* at 26.)  Finally, the 30-day opt out provision states:

> You have the right to opt out and not be bound by the arbitration and class action waiver provisions set forth above by sending (from the email address you use on Thumbtack) written notice of your decision to opt out to opt-out@thumbtack.com with the subject line, "ARBITRATION AND CLASS ACTION WAIVER OPT-OUT." The notice must be sent within thirty (30) days of the later of the Effective Date of these Terms or your first use of the Platform; otherwise, you will be bound to arbitrate disputes in accordance with the terms of those paragraphs. If you opt out of these arbitration provisions, Thumbtack also will not be bound by them.

(*Id.* at 27-28.)

The November 2022 TOU states Thumbtack will provide 30 days' notice of changes affecting the arbitration provision by posting on the TOU website, sending users a message, or otherwise notifying users upon login. (*Id.* at 28.) The TOU also states its arbitration "section will survive any termination of your Account or the Platform." (*Id.*)

Prior to November 7, 2022, Thumbtack's TOU was materially similar in format and content.[3] Specifically, all prior TOUs also include the following features: (1) all-caps, bolded, and hyperlinked language stating the TOU include an arbitration and class waiver section; (2) an Arbitration and Class Waiver section requiring Thumbtack and its users to arbitrate all disputes except for small claims and intellectual property rights; (3) a delegation of all questions regarding arbitrability to the arbitrator; and (4) a 30-day right to opt out of arbitration. (Dkt. Nos. 21-3 at 2, 21-25 (Sept. 16, 2020 TOU); 21-4 at 2, 11-13 (Nov. 1, 2018 TOU); 21-5 at 2, 15-18 (Dec. 7, 2016 TOU); 21-6 at 2, 7-8 (Dec. 11, 2015 TOU).)

**B.    Plaintiff's Accounts and Use**

Plaintiff or the Law Offices of Justin Chin, LLC, created and maintained at least nine accounts on Thumbtack, including from: (1) May 20, 2015 to March 24, 2022; (2) August 29, 2015 to March 2, 2022; (3) May 27, 2023 to May 28, 2023; (4) April 18, 2022 to April 20, 2022; (5) August 30, 2016 to August 6, 2018; (6) December 17, 2013 to August 6, 2018; (7) February 28, 2016 to August 6, 2018; (8) October 24, 2015 to August 29, 2016; and (9) November 8, 2016 to

---

[3] Plaintiff's amended complaint attaches an order granting Thumbtack's motion to compel arbitration in *Turbin v. Thumbtack, Inc.*, Case No. 25-CV-03388-EMC, Dkt. No. 48 (Oct. 28, 2025). (Dkt. No. 17 at 20-29.) In *Turbin v. Thumbtack, Inc.*, the district court stated "the parties appear to agree" there was no binding arbitration provision in Thumbtack's TOU prior to 2018. No. 25-CV-03388-EMC, 2025 WL 3013972, at *1 (N.D. Cal. Oct. 28, 2025) (citing *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023)). However, the December 2015 and 2016 TOUs attached to Thumbtack's motion to compel arbitration in this case contain an Arbitration and Class Action Waiver Section with a subheader: "PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT." (Dkt. No. 21-6 at 7.) The TOUs also include a binding arbitration clause, delegation clause, and 30-day opt out provision. (*Id.* at 7-8.) Because Plaintiff did not oppose Thumbtack's motion and therefore does not dispute Thumbtack's sworn evidence as to the different versions of the TOU, the Court finds all versions of the TOU since 2015 included materially similar mandatory arbitration provisions.

4

United States District Court
Northern District of California

August 6, 2018.  (Dkt. No. 21-1 ¶¶ 7-8.)  Plaintiff assented to the TOU in three ways across his nine accounts: (1) upon registering for a Thumbtack account, (2) through continued use of a Thumbtack account after notice of updates to the TOU, and (3) a clickwrap.  (Dkt. No. 21 at 15-19.)

| Account Creation Date | Account Termination Date | Effective TOU | Method of Assent to Binding Arbitration |
|---|---|---|---|
| October 24, 2015 | August 29, 2016 | December 2015 | Continued Use |
| December 17, 2013 | August 6, 2018 | December 2015 | Continued Use |
| | | December 2016 | Continued Use |
| February 28, 2016 | August 6, 2018 | December 2016 | Continued Use |
| August 30, 2016 | August 6, 2018 | December 2016 | Continued Use |
| November 8, 2016 | August 6, 2018 | December 2016 | Continued Use |
| May 20, 2015 | March 24, 2022 | November 2018 | Clickwrap |
| | | September 2020 | Continued Use |
| August 29, 2015 | March 2, 2022 | November 2018 | Clickwrap |
| | | September 2020 | Continued Use |
| April 18, 2022 | April 20, 2022 | September 2020 | Account Registration |
| May 27, 2023 | May 28, 2023 | November 2022 | Account Registration |

(Dkt. Nos. 21 at 15-19; 21-1 ¶ 8.)  Plaintiff did not opt out of the Arbitration Provisions of any of the TOU in effect during Plaintiff's time using Thumbtack.  (Dkt. No. 21-1 ¶ 16.)

United States District Court
Northern District of California

### 1. Account Registration

To register for a Thumbtack account in April 2022 or May 2023, Plaintiff was required to press a button in immediate proximity to a notice stating by clicking the button, he agreed to the TOU.  (*Id.* ¶¶ 18, 19.)

 

(Dkt. Nos. 21-8 ("By clicking 'Sign up' I agree to the Terms of Use and Privacy Policy.") (blue text and underlining in original); 21-9 ("By clicking Create Account you agree to the Terms of Use and Privacy Policy" or "By clicking Sign up with Facebook or Sign up with Google, you agree to the Terms of Use and Privacy Policy.") (blue text and underlining in original).)  The words "Terms of Use" were hyperlinked to the operative TOU.  (Dkt. No. 21-1 ¶ 19.)

United States District Court
Northern District of California

## 2.    Clickwrap

When Plaintiff visited Thumbtack's website for the first time after Thumbtack's November 1, 2018 TOU update, Plaintiff encountered the following page and to log into and use the Thumbtack platform was required to check a box saying: "By checking this box and clicking this box and clicking Accept I agree to the Terms of Use and Privacy Policy." (Dkt. No. 21-7 (blue text and underlining in original).) The "Terms of Use" contained a hyperlink to the 2018 TOU, which, like the 2022 TOU, contained a notice of binding arbitration on the first page, binding arbitration provision, delegation clause, and 30-day opt out provision. (*Id.* (blue text and underlining in original); Dkt. No. 21-4 at 11-13.) Underneath the "Accept" button, the screen stated "We won't be able to log you in until you accept the Terms of Use and Privacy Policy. If you prefer to review and come back later, you can log out here." (Dkt. No. 21-7 (blue text and underlining in original).)

## Updated Terms of Use and Privacy Policy

We have updated our Terms of Use and Privacy Policy. For more information, visit the FAQ page.

☐ By checking this box and clicking Accept I agree to the Terms of Use and Privacy Policy.

[ Accept ]

We won't be able to log you in until you accept the Terms of Use and Privacy Policy. If you prefer to review and come back later, you can log out here.

(*Id.*)

## 3.    Continued Use

Thumbtack repeatedly references a "continuing use provision," but does not identify the corresponding provision in the TOU language. (Dkt. No. 21 at 12, 15-18.) The top of each updated TOU since 2015 includes the following statement: "BY USING THE PLATFORM, YOU AGREE TO BE BOUND BY THESE TERMS." (Dkt. Nos. 21-2 at 2; 21-3 at 2; 21-4 at 2; 21-5 at 2; 21-6 at 2.) Moreover, the TOU contain a section titled "Modifications" which reads:

> Thumbtack reserves the right, in our sole discretion, to modify these Terms, and any other documents incorporated by reference herein, at any time and without prior notice. Thumbtack will notify you of changes by posting on the Thumbtack Terms of Use website and may also, in our sole discretion, notify you by sending you a message and/or otherwise notifying you when you are logged into your

7

account. Modifications will become effective 30 days after the earliest of: (a) modifications being posted on the Platform; (b) Thumbtack's transmission of a message to you about the modifications; or (c) you are otherwise notified when you are logged into your account. Your use of the Platform after the expiration of the 30 days will constitute your consent to the changes. If you do not agree, you may not access or use the Platform.

(Dkt. No. 21-2 at 3 (blue text in original); *see also* Dkt. Nos. 21-3 at 3; 21-4 at 2; 21-5 at 2-3; 21-6 at 2.)[4]

Since at least 2015, Thumbtack sent emails to all users prior to the effective date of updated TOU and directed them to the updated TOU with hyperlinks or directions to the website. (Dkt. No. 21-1 ¶ 21.)  The e-mails informed users continued use of the platform would be interpreted as acceptance of the updated TOU, and users who did not want to accept the updated TOU may not use the platform.  (*Id.*)

## DISCUSSION

The Federal Arbitration Act ("FAA") governs arbitration agreements "evidencing a transaction involving commerce" and provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract."  9 U.S.C. § 2.  Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted).  In resolving a motion to compel arbitration under the FAA, "a court's inquiry is limited to two gateway issues: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

---

[4] The 2022, 2020, and 2018 TOUs contain identical provisions for modifications.  (Dkt. Nos. 21-2 at 3; 21-3 at 3; 21-4 at 2.)  The 2016 TOU provision for modifications is substantially the same, with some minor word changes (i.e., "amendment" instead of "modification," "or" instead of "and/or").  (Dkt. No. 21-5 at 2-3.)  The 2015 TOU is somewhat different:

Thumbtack reserves the right, in its sole discretion, to modify these Terms, and any other documents incorporated by reference herein, at any time and without prior notice. Thumbtack will notify you of changes by posting on the Platform or sending you an email. Amendments will become effective thirty (30) days after they are posted on the Platform or sent to you by email. Your use of the Platform after the expiration of the thirty (30) days shall constitute your consent to the changes. If you do not agree, you may not access the platform.

(Dkt. No. 21-6 at 2.)

8

issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quotation marks and citation omitted). "If both conditions are met, the FAA requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* (cleaned up).

When, as here, "the making of the arbitration agreement" is at issue, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4). To prevail under the summary judgment standard, the party seeking to compel arbitration must show there is no genuine issue as to any material fact regarding formation of the arbitration contract. *See id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, to deny the motion to compel arbitration, rather than hold a trial on arbitration agreement formation, a court must find no reasonable trier of fact could find an agreement was made. *See Hansen*, 1 F.4th at 672 ("[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved.").

## I.   EXISTENCE OF AN ARBITRATION AGREEMENT

The existence of an arbitration agreement is a question for the Court, not an arbitrator. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564-65 (9th Cir. 2014). The party seeking to compel arbitration "bear[s] the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). "State contract law controls whether the parties have agreed to arbitrate." *Knutson*, 771 F.3d at 565 (citation omitted). Under California law, the "vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration." *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1231 (2023) (quotation marks and citation omitted). To put it another way, "there must be actual or constructive notice" of the contract offer "and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023), For online agreements, "[u]nless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable agreement will be found based on an inquiry notice theory only if: (1) the website

United States District Court
Northern District of California

provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Courts categorize online agreements on a "spectrum" ranging from browse wraps to clickwraps. *See Oberstein*, 60 F.4th at 513. "Clickwrap agreements" are when "a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Id* (citing *Berman*, 30 F.4th at 856). "Courts routinely find clickwrap agreements enforceable." *Id.* (citations omitted). "At the other end of the spectrum are so-called 'browsewrap' agreements, in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.* (citations omitted). "Courts are generally reluctant to enforce such agreements because they often leave users 'unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms.'" *Id.* (citations omitted).

Thumbtack has shown each version of its TOUs from December 11, 2015 through November 7, 2022 includes an arbitration provision. Thumbtack also offers undisputed evidence Plaintiff agreed to the arbitration in a different way depending on which of Plaintiff's accounts is at issue.

### A.    Account Registration

In a "sign-in wrap," "action button wrap," or a "modified clickwrap agreement," "a user is 'notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service.'" *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 923 (N.D. Cal. June 20, 2024) (quoting *Moyer v. Chegg, Inc.*, No. 22-CV-09123-JSW, 2023 WL 4771181, at *3 (N.D. Cal. July 25, 2023)). These kinds of wraps are acceptable "when clearly hyperlinked terms are in immediate proximity to the action button and the website states that clicking the action button constitutes agreement to those terms." *Turbin v. Thumbtack, Inc.*, No. 25-CV-03388-EMC, 2025 WL 3013972, at *3 (N.D. Cal. Oct. 28,

2025) (citing *Oberstein*, 60 F.4th at 516); *see also Oberstein*, 60 F.4th at 516 (finding a notice was reasonably conspicuous because the notice was placed directly above or below an action button at each of three independent stages a user had to complete with the language "By continuing past this page and clicking [the button], you agree to our Terms of Use") (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)).

Thumbtack's account registration screens are "farther down the spectrum from pure click-wrap" agreements. *Turbin*, 2025 WL 3013972, at *3 (analyzing Thumbtack's sign-up screens in a motion to compel arbitration for accounts created in 2021 and 2023). Both of Thumbtack's account registration screens "contain blue hyperlinks that led directly to the Terms of Use, in immediate proximity of an action button, and a clear statement that clicking the action button— whether 'Sign Up' or 'Create Account'—means agreeing to the terms of use." *Id.* The account registration screens satisfy the first *Berman* prong because the placement of the hyperlinked terms in immediate proximity to the Sign Up and Create Account buttons is "reasonably conspicuous." *See Berman*, 30 F.4th at 856 (requiring "reasonably conspicuous notice of the terms to which the consumer will be bound"); *Turbin*, 2025 WL 3013872, at *3 (citing *Oberstein*, 60 F.4th at 516). The account registration screens satisfy the second *Berman* prong because the user must click the "Sign Up" or "Create Account" button in order to agree to the TOU. *See Berman*, 30 F.4th at 856 (requiring "the consumer takes some action […] that unambiguously manifests his or her assent to [the] terms").

So, there is no genuine dispute Plaintiff manifested assent to the 2020 and 2022 TOU in connection with his April 18, 2022 and May 27, 2023 accounts by clicking the "Sign Up" and "Create Account" buttons.

### B.     Clickwrap

The clickwrap presented to users upon the promulgation of Thumbtack's 2018 TOU is a pure click-wrap agreement. Thumbtack "present[ed] users with specified contractual terms on a pop-up screen, and users" had to "check a box explicitly stating 'I agree' in order to proceed." *Oberstein*, 60 F.4th at 513; *see also Turbin*, 2025 WL 3013972, at *3 (finding Thumbtack's November 2018 TOU was a "classic click-wrap agreement" in a motion to compel arbitration).

11

United States District Court
Northern District of California

The account registration screens satisfy the first *Berman* prong because the pop-up screen says "Updated Terms of Use and Privacy Policy" in large font with hyperlinks to the updated TOU immediately below, which is "reasonably conspicuous." (Dkt. No. 21-7.) *See Berman*, 30 F.4th at 856 (requiring "reasonably conspicuous notice of the terms to which the consumer will be bound"); *see also Turbin*, 2025 WL 3013972, at *3 ("The large, bolded language at the top of the page referring to updated terms reinforces that notice was conspicuous."). The account registration screens satisfy the second *Berman* prong because the user has to check a box in order to agree to the TOU and continue using the platform. (Dkt. No. 21-7.) *See Berman*, 30 F.4th at 856 (requiring "the consumer takes some action […] that unambiguously manifests his or her assent to [the] terms"); *Turbin*, 2025 WL 3013972, at *3 ("The terms are disclosed through a blue hyperlink and the plaintiff had to actively click a box to agree to the terms.").

Because "clicking the button constitutes an unambiguous manifestation of consent," there is no genuine dispute Plaintiff manifested assent to the 2018 TOU in connection with his May 20, 2015 and August 29, 2015 accounts. *See Turbin*, 2025 WL 3013972, at *3.

### C.    Continued Use

Thumbtack asserts Plaintiff assented to the 2015, 2016, and 2020 TOU by continuing to use Thumbtack after being notified of updated TOU via email. (Dkt. No. 21 at 15-18.) A similar email notice was at issue in *Ghazizadeh*, 737 F. Supp. 3d at 930-35. In *Ghazizadeh*, the defendant notified the plaintiff of updates to its TOU via email and through banners on its home page. *Id.* at 930. The defendant contended the plaintiff's continued use demonstrated the plaintiff's assent to the updated TOU, which included an arbitration agreement. *Id.* at 930-31. The notice email included a summary of the changes to each policy and hyperlinks to the updated TOU. *Id.* at 931-32. The court found the email notice satisfied both prongs of the *Berman* test. *Id.* at 932. First, the court found the email notice satisfied the first *Berman* prong because the email's subject line indicated updates to the TOU, the hyperlink was in blue font standing out from other text, and the email specifically named updated arbitration language in the summary. *Id.* The plaintiff did not contend he did not receive the email. *Id.* at 933. Second, the court found the email notice satisfied the second *Berman* prong because the plaintiff agreed to an earlier version of the TOU containing

12

a "continuing use" provision and the plaintiff then continued to use the defendant's platform. *Id.* at 933-34.

Here, Thumbtack's TOU "contains an explicit textual notice continued use will act as a manifestation of the user's intent to be bound," so Plaintiff's continued use of Thumbtack after email notices of updates to the TOU satisfies the second *Berman* prong. *See Nguyen*, 763 F.3d at 1177. But unlike *Ghazizadeh*, Thumbtack has not provided the Court with exhibits showing the email notices sent to Plaintiff and other users before its update TOU took effect. *See* 737 F. Supp. 3d at 932 (analyzing the email notices under *Berman* using screenshots of the notice emails provided by Coursera). Therefore, the Court cannot assess whether the email notice was "reasonably conspicuous" for the purposes of the first *Berman* prong.

However, Thumbtack offers evidence it sent notice emails directing users to the updated TOU using hyperlinks or direction to the website and stated continued use after the updated TOU took effect would be interpreted as acceptance. (Dkt. No. 21-1 ¶ 21.) Thumbtack also offers evidence it sent such emails to Plaintiff for each version of the TOU which took effect during the time Plaintiff had accounts on Thumbtack. (*Id.* ¶ 22.) This evidence is undisputed because Plaintiff did not file an opposition to Thumbtack's motion.

So, the Court finds there is no genuine dispute Plaintiff manifested assent to the 2015, 2016, and 2020 TOU through continued use of Thumbtack after receiving email notice of updated TOU.

\* \* \*

In sum, Thumbtack has shown Plaintiff agreed to arbitration on each of his accounts as a matter of law.

## II.    EFFECT OF DELEGATION CLAUSE

Gateway questions of arbitrability are typically for a court to decide, even when there is a facial agreement to arbitrate. *See Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Gateway questions include "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Id.* (internal quotation marks and citation omitted).

United States District Court
Northern District of California

However, "parties may delegate the adjudication of gateway issues if they 'clearly and unmistakably' agree to do so." *Id.*; *see also Rent-A-Ctr.*, 561 U.S. at 68-69 (holding "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" through a delegation clause) (citation omitted)). "[L]anguage delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (citation omitted) (cleaned up).

The delegation clause in Thumbtack's TOUs states:

> "***The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms*** or the Privacy Policy, ***including*** but not limited to any claim that all or any part of these Terms or Privacy Policy is void or voidable, ***whether a claim is subject to arbitration***, or the question of waiver by litigation conduct."

(Dkt. No. 21-2 at 26 (emphasis added); *see also* Dkt Nos. 21-3 at 22-23; 21-4 at 12; 21-5 at 16; 21-6 at 7.)[5]

The delegation clause "clearly and unmistakably" delegates the question of whether Plaintiff's claims are subject to arbitration to the arbitrator. *See Portland GE*, 862 F.3d at 985; *see also Turbin*, 2025 WL 3013972, at *4 (finding identical provision "unambiguous in its delegation to the arbitrator"). In addition, although a party can challenge a delegation clause on unconscionability grounds, "the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023).

In conclusion, Plaintiff does not oppose Thumbtack's motion to compel arbitration and the delegation clause clearly and unmistakably delegates the gateway question of arbitrability to the arbitrator in the first instance. Therefore, an arbitrator, not the Court, must determine whether Plaintiff's claims are subject to the arbitration agreement.

---

[5] Unlike the other versions, the 2015 TOU do not explicitly delegate the question of waiver by litigation conduct to the arbitrator. (*See* Dkt. No.21-6 at 7.)

### III.    OTHER DEFENDANTS

Plaintiff also named Fairclaims, Laura Bottaro, Tyler Bailey, Erika Hager, and Melissa Sultan (the "Other Defendants") as defendants.  Plaintiff did not serve the Other Defendants. (Dkt. Nos. 16 (requiring service by February 17, 2026); 26 (providing proof of service for Thumbtack, but no other defendants).)  Further, Plaintiff stipulated to continuing the initial case management conference with the representation the resolution of the motion to compel arbitration might obviate the need for a conference.  (Dkt. No.  32 at 2.)  So, the Court interprets Plaintiff's failure to serve and his representation as meaning he is not pursuing the Other Defendants in this case.  The Court therefore DISMISSES Plaintiff's claims against the Other Defendants without prejudice for failure to serve.

### IV.    CONCLUSION

Because a valid arbitration agreement exists and the TOU unambiguously delegates the question whether the arbitration agreement encompasses Plaintiff's claims to the arbitrator, the Court GRANTS Thumbtack's motion to compel arbitration of Plaintiff's claims against it and stay the case against Thumbtack pending arbitration.  *See Smith v. Spizzirri*, 601 U.S. 472, 474, 476-78 (2024) (requiring a stay pending arbitration).  The parties shall file a joint update on the status of arbitration on or before March 23, 2027.

The claims against the Other Defendants are DISMISSED without prejudice for failure to serve.

This Order disposes of Docket No. 21.

**IT IS SO ORDERED.**

Dated: March 24, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

15